## Lam, et al. v. Earlington Machine Works.

(Decided May 25, 1916.)

Appeal from Muhlenberg Circuit Court.

1. Contracts—Excuse for Non-performance.—One who agrees to fur-
nish material f. o. b. cars at his place of business and to install
that material for the other contracting party, provided the latter
will build and provide the necessary structures for installing the
machinery sold, will be excused from installing the machinery
sold if the other party fails to provide within a reasonable time
the buildings and structures which he had agreed to make, but the
party who sold the machinery must make reasonable efforts to
install it.

2. Corporations—Suit by Upon Contract—Pleading.—A suit brought
by a corporation on a contract alleged to have been made with it,
if the answer fails to deny, or admits the contract to have been
made with the corporation, the defendant is not entitled to a dis-
missal of the action, or a verdict in his favor, although the proof
may show the contract to have in reality been made by the lessee
of the corporation.

3. Trial—Instructions.—A litigant can not complain of an instruc
tion given to the jury when he offers one in exactly or substan-
tially the same language.

4. Contracts—Pleading—Evidence.—In a suit upon a contract where
the defendant relies upon matters constituting a counter-claim
which are denied by reply, the plaintiff makes out a prima facie
case when he introduces testimony in chief showing the contract
and his compliance therewith and the amount due him; and testi-
mony having for its purpose to deny the right of the plaintiff to
recover on his counter-claim need not be introduced by the plain-
tiff in chief but may be properly introduced in rebuttal.

HUBERT MEREDITH for appellants.

TAYLOR, EAVES & SPARKS for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The plaintiff (appellee), a corporation, sued the de-
fendant, J. W. Lam and the Hillside Coal Company, to
recover from them an alleged balance of account
amounting to $1,492.64, which it is charged to be due
from defendants as the unpaid portion of an account
for the value of a lot of machinery and material which
it had furnished to the defendants for use at the Dovey
mines in Muhlenberg county at their instance and re-
quest, and, that the defendant, Lam, had repeatedly
promised to pay the sum sued for since the completion

of the furnishing of the materials. The answer of Lam consisted of a denial of any part of the debt and sought to avoid payment of any part of it, because, it alleged, that the material sued for was furnished under a contract which the defendant, Lam, had entered into with the plaintiff by which it agreed to furnish and install at the Dovey mines certain screens, cages, chutes, automatic dumpers, and perhaps some other appliances, necessary, or at least thought to be necessary, in successfully operating the mine, and that these were to be furnished and installed by the plaintiff within a reasonable time after the contract was agreed to (which was some time in April or May, 1912), and to be of first class material and suitable for the purposes and to give satisfaction. It is then charged that the plaintiff failed and refused to comply with its contract in several particulars, some of which are, that it did not furnish the material within a reasonable time, and that defendant was thereby deprived of operating his mine, by which he sustained damage; that because of a failure of some of the material to measure up to the specifications in the contract, the cars could not be dumped without injuring them, and that because of this a number of his cars were damaged to the extent of $665.00; that on account of the improper construction of the chute, the coal therefrom would not fall into the car which was being loaded, but would run over it onto the ground, and the coal would sometimes choke in the chute, rendering it necessary for it to be broken up and thereby render it less valuable; and that because the chute was constructed so high that the coal in falling from it would become more or less pulverized and of less value. It is also claimed by defendant that in the effort to remedy these defects, there was not only an expenditure of time and money for material, but likewise a loss because of the consequent idleness of the mine, while the defects were being remedied. These various items of damage sought to be recovered by the counterclaim, aggregate $2,500.00.

It was admitted by the reply that there was a contract, but the matters relied upon as counterclaim were denied, and it was alleged therein that the only delay in the furnishing or installing the machinery contracted for, was due to the failure of the defendant to comply with his part of the agreement to furnish material and work, necessary to equip the mine and structures con-

nected therewith, so as to permit the plaintiff to install the machinery which it agreed to furnish. Upon the trial the jury returned a verdict in favor of plaintiff for the sum of $1,292.46, upon which judgment was rendered against Lam, and to reverse it the defendant prosecutes this appeal. A peremptory instruction was given for defendant, Hillside Coal Company.

One of the contentions of appellant is, that it was a part of the agreement that the plaintiff should furnish an experienced man to superintend the construction of the works at the mine, in connection with which the machinery, which plaintiff was to furnish, should be installed, and that plaintiff failed to furnish this man, and it, therefore, can not be heard to complain that these structures were not properly built, or that they were not built at all; while plaintiff's contention is that, under the contract, all this work was to be done exclusively by the defendant, and that it was to furnish an experienced man only in connecting up the machinery contracted for, after the defendant had made ready his structures to receive it.

As is usual in such cases, there is a contrariety of evidence, each party introducing proof to sustain his contention. The contract was made between Lam, who had recently purchased the Dovey mines, and M. Hanna, Sr., who was the agent and representative of the plaintiff. The foundry and shops of the plaintiff, which are located at Earlington, seems, at the time, to have been operated by M. Hanna, Jr., a son of M. Hanna, Sr., and Miss Celia Hanna, a daughter of the senior Hanna. After receiving this contract through his father, the young Hanna prepared a written contract, which he calls specifications, which was mailed to the defendant for his signature, but no reply of any character was ever received from him. All parties agree that the price to be paid for the material in the original contract was $2,050.00, one thousand dollars of which was due when the machinery was loaded on the car at Earlington, and the balance after the machinery was installed and accepted. In addition to this sum, the plaintiff received a lot of old machinery which it obtained from another mine owned by the defendant. The machinery furnished under the contract was to be so furnished by the plaintiff, f. o. b. cars at Earlington. The proof on behalf of plaintiff shows that upon notification from defendant,

that the work required of him to make ready for the installation of the machinery, had been completed, young Hanna went to the Dovey mines for the purpose of installing the machinery, but upon arrival, he found no one at the mines; nor had there been any work done in the way of completing the necessary structures. He returned home, and, upon another occasion within a short time thereafter and in obedience to a notification from the defendant, he again went to the mines and found practically the same situation. He again returned to his home, and upon a subsequent and third visit, he installed all the machinery that the structures of defendant would permit. The remaining machinery, agreed to be furnished under the contract, together with some additional machinery, he claims was furnished but not installed by him because he never received notification to that effect. Testimony for defendant shows that the installed machinery in some respects did not perform its work; that the cages lifting the coal from the mine to the top of the tipple would sometimes hang, and that the coal in the chute would sometimes become choked, and that on account of the defective work of some of the machinery involved, some of the cars became damaged, and in this way he claims that the contract was not carried out in accordance with its terms, and that he sustained the damages set up in his counterclaim. In rebuttal, the plaintiff showed by a number of witnesses, including the mine boss, who worked at the mine during the time defendant was operating it (he having sold it in May, 1913), that the machinery furnished was of the character specified in the contract, and that minor defects in its working which they observed were due, not to any faulty construction of the machinery furnished by the plaintiff, but because of a failure of defendant to have his structure adapted to that machinery.

It was shown by the plaintiff that the $1,000.00, agreed to be paid, was not paid when the machinery was loaded on the car at Earlington, but in partial payments extending over a period subsequent to the sale of the mines by the defendant on May 23, 1913, and that the balance due on the contract, together with some additional items, amounted to the sum recovered.

The grounds urged for reversal are: (1) The exclusion of testimony offered by defendant, and the admission of certain testimony offered by plaintiff in re-

buttal; (2) that the proof did not authorize, in any event, a recovery for more than $900.00; (3) error in refusing and giving instructions; (4) that the verdict is not sustained by sufficient evidence; and (5) that the court should have given a peremptory instruction to find for the defendant.

We will consider these in the order named: (1) The evidence offered by defendant, and which was refused, consisted of an effort to show by defendant that the months of August, September, October, and November, are the best coal producing months, and the ones in which the greatest demand exists for coal. This, of course, was offered upon the idea that the machinery had not entirely been installed during these months, and that the mine was not in operation and defendant was thereby prevented from making a profit during these prosperous months. He did not show that he had any contract for coal which he was prevented from filling, nor did he show that the current price of coal was such as that he could have mined it at a profit. But, however this may be, the jury allowed nothing upon this item of complaint, nor on any of his counterclaim, and under the well-settled practice in this and other States, the error, if one, could not prejudice the defendant, because the jury failed to find for him upon his theory of the case. Moreover, by other witnesses, the defendant did prove the facts of which he complains. After the plaintiff had shown by its testimony in chief its version of the contract, and that it furnished the materials which it had agreed to, and showed its readiness to install the material on request of defendant, and the balance that was due it, rested its case. The defendant then introduced testimony to support his contentions, and plaintiff, in rebuttal, was permitted to show the failure of the defendant to comply with his part of the contract as a justification for the complaints he made against it. It is seriously contended that this testimony should have been introduced in chief. Aside from the rule which permits the order of the introduction of testimony, to be governed largely by the discretion of the trial court, we think this testimony was properly introduced in rebuttal. All that plaintiff had to show to make out its case was, that it furnished the material, and that it was ready and willing at all times to perform its part of the contract in installing the material at the mines, and to show the

balance that was due it. If defendant then introduced proof to the effect that plaintiff had not complied with its contract, it was then perfectly proper for it to show why it had not complied.

(2) It was shown by plaintiff that the balance due it from the defendant under the contract, plus some additional articles furnished to defendant, was $1,292.46. This is testified to by Mr. Hanna, Jr., and his sister, who was the bookkeeper of plaintiff, and while defendant contended that in no event did it exceed $900.00, yet this was a matter for the jury, and under the evidence, we are not inclined to disturb its finding.

(3) Without setting out the instructions, as we read them, they submitted in substantial form the respective contentions of the parties. It is complained, however, that the court should not have given instruction ''C'' which it gave upon its own motion. This instruction in very apt terms submitted the defendant's contention made in his counterclaim, and is almost identical in language, and we think, actually so in substance, of instruction ''E'' offered by defendant. If, therefore, it was error to have given instruction ''C'' (which we do not hold), it would have been cured so far as the defendant is concerned by his offering one of substantially the same tenor. ''A party can not complain of an instruction given in the exact language of an instruction asked for by him, or in substantially the same language.'' (Hobson on Instructions, section 50); Stowers v. Singer, 113 Ky. 584, 24 R. 395, 68 S. W. 637; First Natl. Bank v. Germania Safety V. & T. Co., 112 Ky. 734, 23 R. 2135, 66 S. W. 716; C., N. O. & T. P. Ry. Co. v. Hollis, 28 R. 1102, 91 S. W. 258; Louisville Water Co. v. Phillips, 139 Ky. 614, 28 R. 557, 89 S. W. 700; Central Ky. Traction Co. v. Combs, 143 Ky. 529, 136 S. W. 1045.

(4) This objection is not seriously insisted upon, as there is abundant testimony to justify the verdict.

(5) As to the fifth ground of complaint, it is contended that the peremptory instruction should have been given to find for the defendant because the proof showed that the plant of the Earlington Machine Works was being operated by young Hanna and his sister at the time, and that they in reality were the ones with whom the contract was made, and that the corporation, as such, had nothing to do with it. It is a well-known rule of practice in this State that a judgment will not be re-

versed for an error not affecting the substantial rights of the complaining party. It is furthermore a rule of practice that a party may not experiment with the court or his adversary, but, if at any time during the trial a material fact is discovered affecting his rights, he must, at that time, take the necessary steps to obtain the benefit of it. If the matter complained of was an error of sufficient dignity to require a reversal, if properly presented, it could not be considered by us on this appeal, because it developed early in the trial that the brother and sister were the real parties to the contract and no effort was made by the defendant at any time to take advantage of this until the offering of the peremptory instruction, nor does it appear that it was offered on this ground. Furthermore, it is alleged in the petition that the plaintiff is a corporation, and that it made the contract with the defendant, and these allegations are not denied in the answer. Therefore, in no view of the case can this complaint be regarded as prejudicial.

Failing to find any grounds justifying a reversal of the judgment, it is affirmed.