## Cumberland Bus Company v. Helton.

(Decided January 29, 1929.)

SAMPSON & SAMPSON for appellant.

LEE & SNYDER for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Reversing.

J. F. Helton was injured in a collision between the bicycle he was riding and a Studebaker car owned and operated by the Cumberland Bus Company. In this action for damages he was awarded a verdict and judgment for $1,000. The bus company appeals.

The testimony for appellee is, in substance, as follows: He had been to Wallin's Creek, in Harlan county, and was riding his bicycle on the way home. He had a carbide lamp, and while en route he got off the wheel, put some water in it, lit it, and hung the light on the wheel

in front of him. It was a bright moonlight night. He was riding on the right-hand side of the road. While coming around the curve at the mouth of Trace branch he saw the bus coming something like 200 yards away. As he left the upper end of the curve the bus came on him, and its bumpers struck his bicycle. His carbide light was burning at the time. His jawbone was broken, four of his teeth were knocked out, and he was cut on his shoulder. While the fracture of his jaw had healed, there was a big sunken place in his jaw where it grew back together, and his teeth did not meet as they did before. He suffered very much for 9 or 10 days. It was about 47 days before he could chew anything hard.

According to the witnesses for appellant, the bus was on the right-hand side of the road, and Helton, instead of being on his right, was on the same side of the road as the bus. The accident happened at a double curve. Because of the curve the lights did not focus on Helton until he was only a few feet away. As Helton was on the wrong side of the road, the driver expected him to get out of the way. When he saw he did not intend to get out of the way he put on the brakes and stopped within a few feet. The front bumpers did not strike the bicycle, but it came in contact with the rear part of the bus. In view of the conflict in the evidence, it is apparent that the questions of negligence and contributory negligence were for the jury, and it cannot be said that its finding was flagrantly against the evidence.

In addition to instructions on ordinary care and negligence, and authorizing a verdict by nine of the jury, the court instructed the jury as follows:

"Instruction No. 1. The court instructs the jury that if you shall believe from the evidence that the defendant, by its agents and servants in charge of its automobile on the occasion mentioned in the evidence carelessly and negligently ran its automobile against or over this plaintiff and injured him at a time plaintiff was using ordinary care for his own safety, then you should find for the plaintiff, unless you so believe you should find for defendant.

"2. The court instructs the jury that if they believe from the evidence that the plaintiff, on the occasion in controversy was negligent and that his negligence contributed to his injury to such an extent that but for it he would not have been injured, the jury will find for the defendant.

"3. If you find for the plaintiff under the instructions herein, then you should award him such a sum in damages as will fairly and reasonably compensate him for such physical pain and mental suffering which he sustained by reason of said injury, and also if you believe from the evidence that said injury was permanent, then you should find for him such an additional sum in damages, if any, as will fairly and reasonably compensate him for his reduction in his power to earn money as a result of such injury, if any, not to exceed, however, in all the sum of $5,000.00, the sum sued for."

Appellant not only objected to these instructions, but offered the following instruction, which was refused by the court:

"Instruction A. The court instructs the jury that if they believe from the evidence that plaintiff at the time of receiving the injury complained of, if he did receive such injury, failed to exercise for his own protection from danger the degree of care reasonably or ordinarily exercised by ordinarily careful persons of discretion or if they believe that the plaintiff at said time was operating his bicycle in the dark without any light or was at the time driving on a curve or on his left hand side of the road, or that he was carrying on said bicycle such a load as to prevent his avoiding a collision and that by such failure to exercise such care on his part or operating his bicycle without light or on the wrong side of the road or in carrying such a load on his bicycle he helped to cause or bring about the injury complained of and that but for such failure and acts on the part of plaintiff, if there were such, he would not have been injured, the jury will find for the defendant unless they believe from the evidence that the defendant's agent, operating the automobile, by the exercise of ordinary care, could have stopped the said automobile in time to prevent the accident after he saw or ought to have seen the danger to plaintiff."

It is not every case where the giving of abstract instructions or the refusal of concrete instructions is regarded as prejudicial. However, we have steadily adhered to the rule that instructions which fail to present

to the jury the reciprocal duties of the parties plaintiff and defendant, and are so general and abstract as to make the jury the judges of both the law and the facts, present a reversible error. Johnson v. Westerfield's Adm'r, 143 Ky. 10, 135 S. W. 425; Peerless Coal Co. v. Copenhaver, 165 Ky. 195, 176 S. W. 1002; Smith v. Cornett, 38 S. W. 689, 18 Ky. Law Rep. 818; C., N. O. & T. P. R. Co. v. Hill's Adm'r, 89 S. W. 523, 28 Ky. Law Rep. 530; Consolidated Coal Co. v. Spradlin, 173 Ky. 229, 190 S. W. 1069. The rule has been applied in those cases where the jury, without being guided by the court, might erroneously conclude that certain acts relied on by the parties did or did not constitute negligence or contributory negligence, and is peculiarly applicable to a case like this involving the rights and duties of those using the public highway, and therefore matters not always within the knowledge of the average juryman. Here the instructions are so general and abstract in form that the jury might have concluded that appellee was entitled to recover, even though he was riding on the wrong side of the road, and this was the proximate cause of his injuries.

On another trial the court, in lieu of instructions No. 1 and No. 2, will give the following instructions:

"1. It was the duty of the driver of defendant's bus on the occasion in question to drive on the right-hand side of the highway in the direction he was going, and to use ordinary care to avoid injury to persons or vehicles on the highway, including plaintiff, and if you believe from the evidence that defendant's driver failed in the performance of either of these duties, and that as the direct and proximate result of such failure, if any, plaintiff was injured, you will find for plaintiff."

"2. It was the duty of plaintiff on the occasion in question to operate his bicycle on the right-hand side of the highway in the direction in which he was going, to have on the front of his bicycle a light showing white or tinted other than red, and of sufficient power to clearly reveal substantial objects at least 50 feet ahead, and to use ordinary care to avoid coming in contact with defendant's bus, and if you believe from the evidence that he failed to perform any one of these duties, and that such failure, if any, so contributed to his injuries that but for such failure his injuries would not have been received, then the law is for the defendant, and you will so find."

Another contention is that the court erred in authorizing the jury to find damages for permanent injuries. The basis of this contention is that the bones in his jaw had properly united, that he had gone back to work, and that his physicians were unable to say that his injuries were permanent. It is true that the physicians were not positive in their statements that appellee's injuries were permanent, but the following facts disclosed by the evidence cannot be overlooked. Appellee's jawbone was broken. Four of his teeth were knocked out. At the time of the trial there was a sunken place in his jaw, and when he closed his teeth they did not meet, but there was what the doctors called an "overbite." From these facts the jury had the right to conclude that appellee's injuries were of a lasting character, and such as to diminish his strength and impair his efficiency.

Considering the mental and physical suffering which appellee must have endured, and the fact that his power to earn money was to some extent permanently impaired, we are unable to say that the damages were excessive.

Judgment reversed, and cause remanded for a new trial consistent with this opinion.